FILED
United States Court of Appeals
Tenth Circuit

May 31, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

JASON FOWLER,

      Plaintiff-Appellant,

v.

      No. 10-1046

UNITED STATES OF AMERICA,

      Defendant-Appellee.

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:08-CV-02650-PAB-BNB)**

Robert T. Fishman of Denver, Colorado (Bruce J. Kaye and Mari C. Bush of Kaye and Bush, LLC, Denver, Colorado, with him on the briefs), for Plaintiff-Appellant.

Marc A. Bonora, Assistant United States Attorney (David M. Gaouette, United States Attorney, and Michael C. Johnson, Assistant United States Attorney, with him on the briefs), Denver, Colorado, for Defendant-Appellee.

Before **LUCERO, SEYMOUR**, **TACHA**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Jason Fowler appeals the district court's determination that the United States was entitled to summary judgment on a tort action he filed against the United States and an employee of the U.S. Air Force, Sean Garrick. We reverse.

**I.**

On June 4, 2006, in Boulder County, Colorado, Mr. Fowler was injured when a car driven by Sean Garrick collided with Mr. Fowler and his motorcycle. Mr. Garrick was an active-duty member of the U.S. Air Force, stationed at Buckley Air Force Base in Aurora, Colorado. He was in Boulder County[1] for a three-day temporary duty assignment ("TDY").

On his TDY assignment, Mr. Garrick worked twelve-hour shifts (7 a.m. to 7 p.m.) for three consecutive days. He was required to report for duty thirty minutes before his shift began. He was also required to rest for at least eight hours before each shift. Mr. Garrick testified that these shifts are demanding; at the end of the twelve-hour shift, Mr. Garrick would be "pretty much too tired to do anything else besides eat and sleep." Dep. of Garrick, Aplt. App. at 291.

The Air Force provided Mr. Garrick, and other employees assigned to the Boulder Facility, with hotel accommodations during TDY.[2] While on this

_____

[1] Out of concerns for national security, the precise location of Mr. Garrick's temporary duty assignment has not been disclosed. We will refer to it as the "Boulder Facility."

[2] Although the Air Force employees were not forced to stay at the hotel, Sgt. Derick Lucas, Mr. Garrick's commanding officer, testified that he knew of only one employee assigned to the Boulder Facility who did not stay at the hotel.

assignment, Mr. Garrick was also eligible for a per diem allowance and mileage reimbursement for the cost of travel between Buckley and the Boulder Facility. Although Mr. Garrick could have stayed in the hotel the night before his shift began, he instead spent the night of June 3rd in Aurora. The next morning, he drove the hour and fifteen minute commute to the Boulder Facility for his shift.

The accident occurred on the first day of Mr. Garrick's TDY. Shortly before 1:00 p.m., Mr. Garrick's commanding officer, Sergeant Lucas, authorized Mr. Garrick to go on a break until 2:30 p.m., so that an Air Force reservist could use his work station. During these breaks, the Air Force does not require employees to spend their time in specific ways, but typically when employees "get a break, they just go and relax at the hotel." Dep. of Sgt. Lucas, Aplt. App. at 306. Mr. Garrick decided to use his break to go to the hotel and sleep. During the break, Mr. Garrick continued to be "on duty." On his way to the hotel, Mr. Garrick and Mr. Fowler were in a car accident with each other. After the accident, Mr. Garrick was picked up by a co-worker and returned to the Boulder Facility to complete his shift.

Mr. Fowler filed suit against Mr. Garrick and the United States under the

---

That employee lived in Boulder County, near the Boulder Facility. To his knowledge, everyone else assigned to the Boulder Facility would stay at the hotel.

Federal Tort Claims Act ("FTCA").[3]  28 U.S.C. § 1346(b).  Mr. Fowler contended the United States should be liable for the collision because it "is liable for the negligent acts of its employees committed in the scope and course of their employment."  Complaint, Aplt. App. at 9 (citing 28 U.S.C. § 1346(b)).  He also alleged state law claims against Mr. Garrick.

The Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679, commonly known as the Westfall Act, "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."  *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)).  Under the Westfall Act, the Attorney General may certify that the employee "was acting within the scope of his office or employment."  28 U.S.C. § 2679(d)(1).  If the Attorney General declines to make such a certification, the employee may petition the trial court "to find and certify that the employee was acting within the scope of his office or employment."  28 U.S.C. § 2679(d)(3).  If such certification is granted, the United States is substituted as defendant in place of the employee, and the litigation is governed by the FTCA.  28 U.S.C. § 2679(d)(4).

After limited discovery, Mr. Garrick moved the district court to certify that

---

[3] The FTCA waives the United States's sovereign immunity in civil damage actions based upon "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).

he was acting within the scope of his employment, to substitute the United States as the sole party defendant, and to dismiss him from the case. *See* 28 U.S.C. § 2679. The following day, the United States filed a motion to dismiss Mr. Fowler's complaint under Fed. R. Civ. P. 12(b)(1), contending the district court lacked subject matter jurisdiction over the action because the FTCA requires the tortfeasor to be within the scope of his employment when the tortious act occurs. The United States denied that Mr. Garrick was acting within the scope of his employment at the time of the accident, and argued it should therefore be dismissed from the lawsuit. It also filed a response to Mr. Garrick's motion to certify, pointing out the Attorney General had declined to certify that Mr. Garrick was acting as a federal employee when the accident occurred. It noted that Mr. Garrick had the burden to prove otherwise.

Because both Mr. Garrick's and the United States's motions related to Mr. Garrick's scope of employment, the court decided Mr. Garrick's certification and the United States's jurisdictional motions together. With respect to Mr. Garrick's certification motion, the court stated:

> The Tenth Circuit has adopted the view that "certification, although subject to de novo review, is prima facie evidence that an employee's challenged conduct was within the scope of his employment. The plaintiff then bears the burden of rebutting the scope-of-employment certification with specific facts." *Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir.1995). Therefore, Garrick bears the burden to present "whatever evidence is necessary to persuade [the Court] that [the] . . . alleged act, not found by the U.S. Attorney to be within the scope of employment, falls within the scope of employment." *Lyons v.*

-5-

*Brown*, 158 F.3d 605, 610-11 (1st Cir. 1998).

*Fowler v. United States*, No. 08-cv-02650-PAB-BNB, 2009 WL 5217980, at *2

(D. Colo. Dec. 28, 2009) (alterations in original) (citations omitted).  With

respect to the United States's motion to dismiss Mr. Fowler's claim against it for

lack of subject matter jurisdiction, the district court said:

> As the United States points out, "[w]hen reviewing a factual attack on subject matter jurisdiction, . . . . [a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Nevertheless, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.*  As the Third Circuit noted in *CNA v. United States*, 535 F.3d 132, 140 (3rd Cir. 2008), a great deal turns on this question because Rule 12(b)(6) or Rule 56 would provide more procedural safeguards to the plaintiff than does Rule 12(b)(1).  For example, a district court acting under Rule 12(b)(1) may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true.  *Id.*  "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt*, 46 F.3d at 1003.
>
> . . . [H]ere, both the substantive claim and the jurisdictional issue require application of the FTCA. . . .  Therefore, and because all the parties have relied upon evidence outside the pleadings and none has indicated any objection to the Court converting the motion to one for summary judgment, the Court shall convert the United States' motion into one for summary judgment.

*Id.* at *2-3.[4]  Having thus framed the motions before it, the court concluded:

_____

[4] The United States did not appeal the district court's conversion.

-6-

> Here, if Garrick has met his burden of presenting evidence sufficient to persuade the Court that he was acting within the scope of his employment, then the United States necessarily will have failed to establish that it is entitled to judgment as a matter of law. Conversely, if summary judgment for the United States is warranted here, Garrick will have failed to meet his burden of proof.

*Id.* at *3.

The district court granted the United States's motion for summary judgment, dismissed the United States from the case, and denied Mr. Garrick's motion for certification. *Id.* at *6. Subsequently, Mr. Fowler and Mr. Garrick filed a joint stipulation for the dismissal, with prejudice, of all Mr. Fowler's remaining claims against Mr. Garrick, reserving Mr. Fowler's right to pursue his FTCA claim against the United States. Mr. Fowler then appealed the court's summary judgment decision in favor of the United States.

At oral argument before this court, the United States for the first time asserted that we lack jurisdiction over this appeal because, it said, the Westfall Act decision made the appeal of summary judgment moot. We ordered supplemental briefing on this issue.[5]

---

[5] At oral argument, the United States argued that when the district court denied Mr. Garrick's motion to certify scope of employment, "it automatically dismisse[d] the United States from this case." Transcript of Oral Argument at 18. In its supplemental brief, the United States does not appear to take such a position, but it continues to argue that the summary judgment appeal is moot because the district court's Westfall Act ruling found "that Garrick was not acting in the scope of his employment at the time of the accident . . . . That ruling became the law of the case. Consequently, this Court cannot grant any effectual relief to Mr. Fowler." Aple. Supp. Br. at 7.

-7-

For the reasons explained below in Part II.B., we conclude that the district court's Westfall decision regarding Mr. Garrick did not moot Mr. Fowler's appeal. We first address the district court's decision granting summary judgment to the United States.

## II.

### A.    Summary Judgment.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is inappropriate if a rational factfinder could find in favor of the nonmoving party based on the evidence presented. *See Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000). "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the court." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

Under the FTCA, the government is liable only for tortious acts committed by employees "acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1). "Scope of employment" is determined by the law of the place where the accident occurred. *Franklin v. United States*, 992 F.2d 1492,

1495 (10th Cir. 1993); *see also* 28 U.S.C. § 1346(b)(1). Accordingly, we examine Colorado respondeat superior law in this case, as did the district court, to determine if Mr. Garrick was within the scope of his employment when the car accident occurred.

Under Colorado law, "the doctrine of respondeat superior is based on the theory that the employee acts on behalf of the employer when the employee is within the scope of his or her employment." *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1019 (Colo. 2006). An employer "is liable only if the servant's conduct was in some way caused by an intent to serve his employer's interests and connected with his authorized acts." *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo. 1995) (en banc) (internal quotation marks omitted). In general, "the question of whether an employee is acting within the scope of the employment is a question of fact . . . ." *Raleigh*, 130 P.3d at 1019.

Significantly, Colorado courts have long recognized the so-called "traveling employee" rule. Under this rule, when an employee is "[r]equired to be away from his home by the duties of his employment, his compensation covering the expenses necessary and incident to living away from home, any hazards present in staying at the motel, eating at a restaurant, and in going to and from these places" are considered incident to the employee's employment. *Alexander Film Co. v. Indust. Comm'n*, 319 P.2d 1074, 1077 (Colo. 1957) (en banc). Thus, when a traveling employee "must of necessity eat and sleep in

various places in order to carry on the business of his master," the acts committed by an employee "while lodging in a public accommodation, preparing to eat, or while going to or returning from a meal" are necessarily incident to, and within the scope of, his employment. *Hynes v. Donaldson*, 395 P.2d 221, 223 (Colo. 1964). Under this doctrine, the employer may be liable for those acts that "are necessarily incidental to the employment." *Pham v. OSP Consultants, Inc.*, 992 P.2d 657, 659 (Colo. App. 1999); *see also Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 70 (Colo. 2007) (en banc) ("[U]nder Colorado law, a traveling employee need not be engaged in the actual performance of work to be considered engaged in the course of his employment.").

The United States offers two reasons why the traveling employee rule should not apply in this case. First, it contends Mr. Garrick was not "required" to be away from home, because the Air Force would have allowed him to commute from Buckley. Second, it asserts that Mr. Garrick's actions while on the break were not "necessarily incidental" to his employment.

The government's first point is unpersuasive. It offers no support for its rigid interpretation of the word "required." Although Mr. Garrick has not pointed to any cases in which the traveling employee doctrine was extended to an employee who was working an hour and fifteen minutes away from home, the facts in this case strongly imply that, for all practical purposes, Mr. Garrick was required to stay in the hotel near the Boulder Facility. If Mr. Garrick were to

-10-

commute to the Boulder Facility each day, while also completing his shift and rest requirements, he would have only one hour at home to eat dinner and breakfast, while also showering and attending to other personal needs. Although commuting may have been technically possible, staying at the hotel was a practical necessity. This conclusion is bolstered by the Air Force's decision to provide meal and travel reimbursements and lodging for TDY at the Boulder Facility. *Cf. Hynes*, 395 P.2d at 223 ("As was done in this case, the master recognized these necessities [of working away from home] and paid the expenses of lodging."). Additionally, apparently all other employees living outside Boulder County made use of the hotel accommodations. Mr. Garrick's decision to drive to Boulder County on the morning of his first shift, and to drive home the evening that his TDY assignment ended, does not undermine this conclusion. Completing the one and one-half hour commute once in a day does not make it practical to commute twice-a-day, between twelve-hour shifts, with eight hours of mandated rest time. Although the Air Force did not force Mr. Garrick to stay in the hotel, it was clearly in the Air Force's best interest that he do so. Reading the facts in the light most favorable to Mr. Fowler, as we must, we are easily persuaded that Mr. Garrick was a "traveling employee" for purposes of Colorado law.

Yet, even as a traveling employee, Mr. Garrick's actions will fall within the scope of his employment only if they were "necessarily incidental" to his employment. *See id.* The district court declined to decide whether the traveling

employee doctrine applied because it determined that Mr. Garrick's trip to the hotel to nap was not "necessarily incidental" to his employment. *Fowler*, 2009 WL 5217980, at *5 n.2. The United States contends the district court made factual findings relating to scope of employment which we must review only for clear error.[6] Because summary judgment may only be based on undisputed facts, however, such "factual findings," to the extent they were made, were inappropriate for summary judgment. *See* Fed. R. Civ. P. 56(a). If we characterize the district court's determination as based on undisputed facts, we review those conclusions de novo for summary judgment purposes. *See, e.g.*, *Garrison*, 428 F.3d at 935.

When considering which actions are "necessarily incidental" to a traveling employee's job, Colorado courts have broadly construed the scope of employment. For example, in *Hynes*, 395 P.2d at 222-23, a New Mexico employee was in Denver for business meetings, and was involved in an automobile accident on the way back to his hotel from a business dinner. The Colorado Supreme Court reversed summary judgment in favor of the employer, holding there was a question of fact as to whether the employee was within the scope of his employment. *Id.* at 223. Similarly, in *Goettman*, 176 P.3d at 64-65,

---

[6] Such alleged findings include "that Garrick was on a 'pleasurable frolic of his own' that was not 'necessarily incidental' to his work and not 'committed in the furtherance of his employer's business.'" Aple. Br. at 13 (quoting *Fowler*, 2009 WL 5217980, at *5).

a miner in Colorado on a temporary assignment went to dinner after work one evening with a co-worker, and then drove with the co-worker while drunk back to the hotel at 1:00 a.m. The car went off the road, killing the co-worker. *Id.* The Colorado Supreme Court held that these facts created a reasonable inference that the driver was acting within the scope of his employment as a traveling employee. *See id.* at 70. The court also explained, "[I]n Colorado, the question of whether an employee's consumption of alcohol is outside of the scope of his employment depends upon the facts and circumstances of the case." *Id.* at 69-70.

On the other hand, the Colorado Court of Appeals had previously affirmed summary judgment in a case in which an out-of-state employee caused a fatal car accident while driving drunk back to his employer-provided apartment after leaving a bar. *Pham*, 922 P.2d at 659-60. The accident was held to be outside the employee's scope of employment because his trip to the bar was not necessarily incidental to his employment. In its scope-of-employment analysis, the court emphasized that the outing to the bar began several hours after work had ended, the outing was for "personal entertainment," and the tacos the employee ate outside the bar at 1:30 a.m. were "incidental to the trip to the bar and the late hour at which [he] left the bar–not to the necessities of employment away from home." *Id.* at 660.

Reading the facts here in a light most favorable to Mr. Fowler, we conclude that summary judgment was improperly granted. The United States and the

district court make much of the argument that Mr. Garrick was free to do "whatever he want[ed]," during his break, Aple. Br. at 6, "including shopping for sneakers or washing his car," *id.* at 19. *See also Fowler*, 2009 WL 5217980, at *5. It matters not what Mr. Garrick could have done, but rather what he actually did do. "[N]ot every act by an employee working away from home is compensable: 'He might rob a bank; he might attend a dance; or he might engage in other activities equally conceivable for his own pleasure and gratification . . . .'" *Pham*, 992 P.2d at 660 (quoting *Alexander Film Co.*, 319 P.2d at 1078) (emphasis omitted)). However, the possibility that an employee *could* rob a bank in his free time is not in itself a reason to find that he is outside the scope of employment when he does not rob a bank. Similarly, the possibility that Mr. Garrick could have bought shoes during his break is not determinative of whether his trip to the hotel to nap was within his scope of employment.

Several factors lead us to conclude that the accident may have occurred within the scope of Mr. Garrick's employment: First, there is evidence that Mr. Garrick was given the break for the benefit of the U.S. Air Force. There were reservists at the Boulder Facility that day who needed an opportunity to work at the console Mr. Garrick was using, to gain proficiency with the equipment. If there had not been extra employees on duty that day, Mr. Garrick may well have never left the Boulder Facility to take a nap at the hotel. Second, unlike the accidents in *Hynes* and *Goettman*, Mr. Garrick was in the middle of his shift when

-14-

the accident occurred,[7] which is clearly distinguishable from a trip to the bar five hours after work has ended. Third, although the parties dispute whether Mr. Garrick intended to benefit the Air Force by napping, Mr. Garrick testified that he intended to nap so he could return to work refreshed and more alert. His commanding officer also testified that such breaks help employees to work more efficiently. Finally, although breaks like the one given to Mr. Garrick are not frequent, his commanding officer assumed that Mr. Garrick would return to his hotel because "[u]sually, when they get a break, they just go and relax at the hotel." Dep. of Sgt. Lucas, App. at 306.

The district court emphasized that Mr. Garrick "did not believe returning to the hotel during his break was part of his duties." *Fowler*, 2009 WL 5217980, at *5. Such a fact is not determinative of scope of employment under Colorado law. Colorado courts have found traveling employees to be within the scope of their employment when eating dinner at a restaurant, even if going to the restaurant was not part of the employee's duty. *See, e.g.*, *Alexander Film Co.*, 319 P.2d at

---

[7] The United States argues that for members of the military, the employee's "on-call" status is inapplicable to the scope of employment analysis, since "[m]ost military personnel are paid on a 24 hour basis and are technically 'on call' at all times." Aple. Br. at 20 (quoting *Pruden v. United States*, 399 F. Supp. 22 (E.D.N.C. 1973)). The accident at issue in this case, however, occurred when Mr. Garrick was in the middle of his shift, not while he was off duty. Since we need not rely on Mr. Garrick's active military status to determine his scope of employment under Colorado law, we find this line of cases inapposite. *Cf. Flohr v. Mackovajak*, 84 F.3d 386 (11th Cir. 1996) (concluding a civilian Army employee acted within the scope of employment when in an automobile accident driving from a restaurant to the hotel during a business trip).

1077.  The district court erred by construing scope of employment under the traveling employee doctrine so narrowly.  On this record, there is a genuine issue of material fact as to whether Mr. Garrick was within the scope of his employment during the accident.  We therefore hold that summary judgment in favor of the United States on Mr. Fowler's claim was improper as a matter of law.

## B.  Certification of Scope of Employment under the Westfall Act

Neither party appealed the district court's denial of Mr. Garrick's motion for certification.  The district court correctly noted that both the Westfall certification and summary judgment motions depend on the same issue–whether Mr. Garrick was acting within the scope of his employment under Colorado law.  *See Fowler*, 2009 WL 5217980, at *3.  As we have already explained, the FTCA waives the United States's sovereign immunity for tort actions arising from a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  In effect, this waiver enables tort plaintiffs to bring actions against the federal government under a theory of *respondeat superior*.  *Wood v. United States*, 995 F.2d 1122, 1125 (1st Cir. 1993) (en banc), *abrogated on other grounds by Osborn*, 549 U.S. at 247-52.  The Westfall Act, on the other hand, "create[s] a type of *respondeat superior* immunity for federal employees that roughly tracks the federal government's *respondeat superior* liability."  *Id.*  Through certification, the United States is substituted as the defendant in place of the

-16-

defendant-employee who "was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(1)-(4).

Under the Westfall Act, a court must "identify and resolve" any disputed issues of fact regarding the employee's scope of employment. *Arthur v. United States*, 45 F.3d 292, 296 (9th Cir. 1994). If there are disputed issues of fact, the district court "should hold such hearings as appropriate (including an evidentiary hearing if necessary), and make the findings necessary" to decide the Westfall certification question. *Id.* The court here made no such express findings of fact, and relied on its summary judgment analysis as the basis for denying Mr. Garrick's motion for certification. It declared that "if summary judgment for the United States is warranted here, Garrick will have failed to meet his burden of proof [for certification under the Westfall Act]." *Fowler*, 2009 WL 5217980, at *3. It also recognized that under Colorado law, "the question of whether an employee is acting within the scope of the employment is a question of fact," *id.* at *6 (quoting *Raleigh*, 130 P.3d at 1019) (internal quotation marks omitted). The court then concluded its discussion by stating, "[H]ere, there are no genuine issues of material fact, and the United States is entitled to judgment as a matter of law that Garrick was acting outside the scope of his employment when he drove back to the hotel during a break." *Id.* Accordingly, it granted the United States's motion, dismissed the United States as a defendant, and denied Mr. Garrick's motion without further analysis. *See id.*

-17-

The United States contends the district court's determination under the Westfall Act that Mr. Garrick was acting outside the scope of his employment precludes it from being sued in federal court because, under the FTCA, the United States can only be sued for claims involving employees acting within the scope of their federal employment. Because no one appealed the Westfall determination, it argues, this court is without jurisdiction to consider Mr. Fowler's appeal of the district court's similar determination under the FTCA. Its claim is without merit.

The United States is incorrect in its apparent assumption that the district court's Westfall determination dismissed the United States from this action. It did nothing of the sort. As already explained, the purpose and effect of the Westfall Act is to protect federal employees, not the federal government. The effect of the district court's Westfall determination was to deny Mr. Garrick's request for immunity, not to dismiss the United States from this action.

Because the United States remains a party to this litigation, our review of the district court's grant of summary judgment is not moot. "A case is moot when it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1254 (10th Cir. 2001) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)) (internal quotation marks omitted). A live controversy continues to exist in this case, however, because our reversal of summary judgment permits Mr. Fowler to pursue his tort action against the United States.

-18-

For the foregoing reasons, we **VACATE** the district court's determination that Mr. Garrick was not acting within the scope of his employment for purposes of the FTCA and **REMAND** for further proceedings consistent with this opinion.[8]

---

[8] We need not and do not consider the district court's similar determination under the Westfall Act, as that decision was not appealed. In any event, because the parties have voluntarily dismissed Mr. Garrick from this case, the Westfall determination is moot and will not be before the district court on remand.