FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SCOTT HOCKENBERRY,

    Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 21-6055

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:19-CV-01111-G)**
_____

Submitted on the briefs:[*]

Rodney K. Hunsinger & Jared R. Boyer, HB Law Partners, PLLC, Norman, Oklahoma,
for Plaintiff-Appellant.

Brian M. Boynton, Acting Assistant Attorney General; Robert J. Troester, Acting United
States Attorney; Mark B. Stern, Attorney, Appellate Staff; Amanda L. Mundell,
Attorney, Appellate Staff, United States Department of Justice, Washington, D.C., for
Defendant-Appellee.

_____

Before **MORITZ**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

_____

Scott Hockenberry filed a complaint against Michelle Kalas in Oklahoma state court alleging state-law claims of defamation, tortious interference, invasion of privacy, intentional infliction of emotional distress, and abuse of process. Hockenberry's claims related to Kalas's statements to third parties accusing him of sexual assault and other misconduct. The United States certified under 28 U.S.C. § 2679 that Kalas was acting within the scope of her federal employment when she made such statements. It then removed the action to federal court and substituted the United States as the defendant, deeming Hockenberry's claims to be brought under the Federal Torts Claims Act ("FTCA").

Once in federal court, Hockenberry challenged the United States' scope-of-employment ("SOE") certification. The district court rejected that challenge, ruling that Hockenberry failed to demonstrate that Kalas had engaged in conduct beyond the scope of her federal employment. The court then granted the United States' motion to dismiss Hockenberry's action for lack of subject-matter jurisdiction based upon the United States' sovereign immunity.

Hockenberry appeals, asserting error in the district court's denial of his motion challenging the United States' SOE certification. Exercising jurisdiction under 28 U.S.C. § 1291, we hold that the district court erred in concluding that an evidentiary hearing on Hockenberry's motion was not necessary. We therefore reverse the district court's judgment and remand for further proceedings consistent with this Opinion.

2

I.    **Background**

Hockenberry is a Captain in the United States Army and Kalas is an Army Reserve Captain. In 2016, Hockenberry and Kalas were employed as attorneys at Fort Sill near Lawton, Oklahoma. Hockenberry was a special victims prosecutor and Kalas was a civilian legal assistance attorney. Beginning in May 2016, Hockenberry and Kalas became involved in a consensual sexual relationship. In August 2016, Kalas made statements accusing Hockenberry of sexual assault and other misconduct to work colleagues, an officer with the Lawton Police Department, and a Sexual Assault Response Coordinator at Fort Sill. The Army brought formal charges of sexual and physical assault against Hockenberry under the Uniform Code of Military Justice. The charges were referred to a general court-martial.

While the court-martial proceedings were pending against him, Hockenberry filed a complaint against Kalas in Oklahoma state court, alleging that she

> made false and defamatory allegations against [him] for sexual assault to the Lawton Police Department, the Sexual Harassment and Assault Response and Prevention Office of the U.S. Army, the U.S. Army Criminal Investigation Command, Comanche County District Court, and other individuals, colleagues, and friends.

Aplt. App., Vol. I at 25. The United States Attorney for the Western District of Oklahoma (acting as the Attorney General's designee) certified under § 2679 that "Kalas was an employee of the United States acting within the scope of her employment at the time of the allegedly negligent or wrongful acts or omissions that form the basis of [Hockenberry's] claims." *Id.* at 23. The United States then removed Hockenberry's action to federal court, substituted itself as the defendant in

3

the place of Kalas, and immediately moved to dismiss the action for lack of subject-matter jurisdiction, arguing that it has not waived sovereign immunity as to Hockenberry's claims under the FTCA.

Hockenberry moved to challenge the United States' SOE certification and its substitution as the defendant. He argued that Kalas's statements were not made within the scope of her employment because they were false and "were fabricated out of a vengeful and self-interested desire to destroy his life and career." *Id.* at 62. Hockenberry accompanied his motion with his own sworn affidavits, the results of a polygraph test he had taken, and other evidence he contended supported his assertions.

The United States argued in opposition that, under Army Command Policy and the Army's rules of professional conduct applicable to attorneys, Kalas was required to report to appropriate Army personnel a fellow soldier's sexual assault and other misconduct. It asserted that Army policy also recognizes that victims of sexual assault may confide in friends or family members before making an official report. As to Kalas's report to the Lawton Police Department, the United States claimed that, under Army procedures, persons seeking a Military Protective Order ("MPO") are advised to also seek a civilian protective order. In addition, once an MPO was issued against Hockenberry, the Army was required to notify appropriate civilian authorities because Kalas did not reside on the military installation and an MPO is not enforceable off base.

The United States contended there was only one reasonable conclusion under the facts presented:  that Kalas acted within the scope of her employment because her reports of misconduct served the Army's interests.  It pointed, for example, to statements from an Army Colonel who considered Kalas's use of Army services available to her as an alleged victim of sexual assault and her participation in the ensuing investigation and prosecution of Hockenberry to be within the scope of her duties.  The United States also submitted Kalas's sworn statement that she believed she was obligated to report Hockenberry and did so in good faith and in the performance of her official duties.  It further maintained that Kalas's decision to report served the Army's interest by maintaining confidence in the military justice system in which Hockenberry worked.

While Hockenberry's motion was pending in the district court, the court-martial proceedings against him concluded with a verdict of acquittal on all charges and specifications against him.

The district court denied Hockenberry's motion challenging the SOE certification.  It determined that Kalas was acting within the scope of her employment as defined by Oklahoma's respondeat superior law.  The court rejected as flawed Hockenberry's premise that Kalas acted outside the scope of her employment by fabricating sexual assault allegations to harm his career.  It concluded that, under Oklahoma law, an employer may be held responsible for its employee's torts, even if the employee "willfully or maliciously committed the wrongs" or "was acting within the scope of authority to do the particular thing

5

rightfully that was subsequently done in a wrongful manner." *Baker v. Saint Francis Hosp.*, 126 P.3d 602, 605 (Okla. 2005). While acknowledging evidence in the record that Kalas had taken umbrage at Hockenberry and that she may have reported with an eye toward harming him, the court found that motivation was not the sole moving force behind her reporting; rather, the court concluded she was motivated at least in part by her employment duties and obligations. In reaching this conclusion, the court pointed to Kalas's sworn statement that she was obligated to report and did so in good faith, as well as the Army Colonel's conclusion that Kalas was acting in the scope of her employment. It held that the record does not reasonably reflect that Kalas's report "ar[ose] wholly from some external, independent, and personal motive," *Patsy Oil & Gas Co. v. Odom*, 96 P.2d 302, 307 (Okla. 1939), and therefore that Hockenberry had not met his burden to demonstrate that Kalas's statements to the Army and to the Lawton Police Department accusing him of sexual assault and other misconduct were made outside the scope of her employment.

The district court further held that Hockenberry failed to present specific evidence contradicting the SOE certification with respect to Kalas's statements to friends and colleagues because his complaint did not provide sufficient detail regarding such statements and he did not explain how the court should consider the statements in light of the friends' and colleagues' roles in the Army's investigation of Hockenberry.

Finally, the court further concluded that no hearing was required because only one reasonable conclusion could be drawn from the facts.

6

Having decided that the United States should remain substituted as the defendant in this action, the district court then granted the United States' motion to dismiss, holding that it lacked jurisdiction over Hockenberry's claims under the FTCA because the United States has not waived its sovereign immunity for claims arising out of the intentional torts that Hockenberry alleged. *See* 28 U.S.C. § 2680(h) (excluding from the United States' waiver of sovereign immunity under the FTCA "[a]ny claim arising out of . . . abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights").

## II.    Discussion

Hockenberry appeals, challenging the district court's holding that Kalas's statements accusing him of sexual assault and other misconduct were made within the scope of her employment. He contends the district court erred by assuming the veracity of Kalas's accusations against him and relying upon the evidence of Army policies requiring the reporting of sexual assaults and other misconduct. Pointing to the evidence he presented that Kalas fabricated her accusations, Hockenberry argues that such conduct falls outside the scope of her employment as defined by Oklahoma respondeat superior law. He asserts the district court should have either (1) granted his motion because the United States presented no contrary evidence, or (2) held a hearing before resolving the pivotal question of Kalas's motivation.

### A.    The Westfall Act and the FTCA

Under 28 U.S.C. § 2679, commonly referred to as the Westfall Act, federal employees are absolutely immune from state-law tort claims that arise "out of acts

7

they undertake in the course of their official duties." *Fowler v. United States*, 647 F.3d 1232, 1235 (10th Cir. 2011) (internal quotation marks omitted). When a civil action is filed against a federal employee in state court, the Attorney General may certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." § 2679(d)(2). Upon such certification, the Attorney General shall remove the case to federal court, the action shall be deemed to be brought against the United States under the FTCA, and the United States shall be substituted as the defendant. *Id.*

"Once the United States is substituted as the defendant under [the Westfall Act], the FTCA is plaintiff's sole remedy." *Richman v. Straley*, 48 F.3d 1139, 1146 (10th Cir. 1995). The FTCA waives the United States' sovereign immunity for tort actions arising from

> the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Thus, "[o]rdinarily, scope-of-employment certifications occasion no contest. While the certification relieves the employee of responsibility, plaintiffs will confront instead a financially reliable defendant." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 422 (1995). But where, as here, a claim falls within an exception to the FTCA's waiver of sovereign immunity, "substitution of the United States . . . cause[s] the demise of the action" and the United States'

8

immunity does not permit a plaintiff to bring the federal-employee defendant back into the action. *Id.*

The Attorney General's SOE certification "is conclusive for purposes of removal." *Osborn v. Haley*, 549 U.S. 225, 231 (2007). But following removal, the SOE certification is "subject to de novo review" in the district court. *Richman*, 48 F.3d at 1145. In such review, the SOE certification "is prima facie evidence that an employee's challenged conduct was within the scope of his employment. The plaintiff then bears the burden of rebutting the scope-of-employment certification with specific facts." *Id.*

> Under the Westfall Act, a court must identify and resolve any disputed issues of fact regarding the employee's scope of employment. If there are disputed issues of fact, the district court should hold such hearings as appropriate (including an evidentiary hearing if necessary), and make the findings necessary to decide the Westfall certification question.

*Fowler*, 647 F.3d at 1241 (citation and internal quotation marks omitted).

**B.    Oklahoma Respondeat Superior Law**

"[S]cope of employment is defined by the respondeat superior law of the state where the incident occurred." *Richman*, 48 F.3d at 1145 (internal quotation marks omitted). Under Oklahoma law,"*respondeat superior* liability is normally a question of fact to be determined . . . from all the surrounding circumstances." *Baker*, 126 P.3d at 606.

> [I]n general terms it may be said that an act is within the course of employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion

9

which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

*Ada-Konawa Bridge Co. v. Cargo*, 21 P.2d 1, 7 (Okla. 1932) (internal quotation marks omitted).  Thus, a fact-finder "must decide if [the employee's] acts were so far removed from any work-related endeavor and geared, instead, toward a personal course of conduct unrelated to her work so that it would no longer be appropriate to hold her employer responsible for her act(s)." *Baker*, 126 P.3d at 607; *see also Tulsa Gen. Drivers, Warehousemen, & Helpers Union v. Conley*, 288 P.2d 750, 753 (Okla. 1955) (explaining that whether there was "a complete departure" from an employee's scope of employment requires "the weighing of the extent and nature of the deviation, the surrounding facts which characterize and explain it, and the intention and purpose of its making").  "Therefore, the purpose or motivation behind [the employee's] act(s) is an important, and potentially an overriding, consideration permeating resolution of arriving at a correct answer to the *respondeat superior* question." *Baker*, 126 P.3d at 607 (noting the question in that case required "determining whether [the employee] engaged in a course of conduct motivated by her own personal reasons or, instead, whether she was wholly or partly still engaged in some type of misguided attempt to carry out the business of her employer," *id.* at 607 n.5).  "If personal motivation was the sole moving force behind the act(s), the employer should not be required to respond in damages for her actions[.]" *Id.* at 608 n.5.

10

###### C.    Standards of Review

The district court ultimately dismissed Hockenberry's FTCA claims against the United States, as the substituted defendant, for lack of jurisdiction. But he contends the court erred in its preceding decision rejecting his challenge to the United States' SOE certification. The district court did not hold an evidentiary hearing on that issue because it found that only one reasonable conclusion could be drawn from the facts. In doing so, the court cited *Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996), which held that "[t]he question of whether an employee has acted within the scope of employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts." Therefore, we construe the district court's ruling as deciding the scope-of-employment issue in this case as a matter of law. The parties, and other courts, agree that we review that legal determination de novo. *See, e.g.*, *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019); *Maron v. United States*, 126 F.3d 317, 326 n.8 (4th Cir. 1997); *Coleman v. United States*, 91 F.3d 820, 823 (6th Cir. 1996). We also review de novo the district court's construction of Oklahoma law. *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 884 (10th Cir. 2006).

Further, we have said that, "[i]f there are disputed issues of fact, the district court should hold such hearings as appropriate (including an evidentiary hearing if necessary), and make the findings necessary to decide the Westfall certification question." *Fowler*, 647 F.3d at 1241 (internal quotation marks omitted). But we have not decided what standard a court should apply in assessing whether disputed

11

issues of fact exist.  Other courts have applied "the genuine-issue-of-material-fact standard used at summary judgment, interpreting the evidence in the light most favorable to the party opposing substitution [of the United States as the defendant]." *Kearns v. United States*, 23 F.4th 807, 812 (8th Cir. 2022); *see also Day v. Mass. Air Nat'l Guard*, 167 F.3d 678, 686 (1st Cir. 1999); *Taboas v. Mlynczak*, 149 F.3d 576, 581-82 (7th Cir. 1998); *Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir. 1994).

> This is because briefing and evidence about a contested substitution [of the United States] is akin to summary judgment:  just as the court would deny the summary judgment motion if a genuine issue of material fact exists and proceed to trial, the court here should proceed to an evidentiary hearing, where the court takes the role of fact-finder to resolve those issues of material fact.

*Kearns*, 23 F.4th at 812.  Neither party argues that a different standard applies.  We will proceed by applying the genuine-issue-of-material-fact standard in reviewing the district court's decision not to conduct an evidentiary hearing on Hockenberry's motion challenging the SOE certification.

### D.    Hockenberry's Contentions

Hockenberry first asserts that the district court should have granted his motion challenging the SOE certification because the United States presented no evidence contradicting his evidence that Kalas fabricated her accusations of sexual assault and other misconduct against him with a motive to harm him.  But this contention

overlooks that the United States submitted Kalas's sworn statement that her reports of sexual assaults and other misconduct by Hockenberry were made in good faith.

Hockenberry alternatively maintains that the evidentiary record presented disputed fact issues that required a hearing. We agree. Hockenberry does not dispute that Army policies require the truthful reporting of sexual assaults and other misconduct. But under Oklahoma law, whether Kalas's statements were made within the scope of her employment depends on whether they "ar[o]se wholly from some external, independent, and personal motive" on her part "to do the act upon [her] own account." *Ada-Konawa Bridge Co.*, 21 P.2d at 7 (internal quotation marks omitted). In *Baker*, for example, the Oklahoma Supreme Court reversed a summary judgment ruling that a daycare employee was acting within the scope of her employment when she hit the head of an infant in her care against a shelf. 126 P.3d at 608. The court presented the question as whether that act was "in whole or in part a misguided attempt to quiet the infant or . . . a conscious attempt to harm or injure the child because of [the employee's] own personal irritation or annoyance at the child?" *Id.* at 607.

Here we find no basis for the district court's conclusion that it could decide the SOE issue as a matter of law, per *Nail*, 911 P.2d at 918, on the ground that only one reasonable conclusion as to Kalas's motivation could be drawn from the facts. If Kalas fabricated her reports of misconduct, a reasonable conclusion could be drawn that she was wholly motivated by an external, personal purpose and therefore acted outside of the scope of her employment in making the statements. *See Ada-Konawa*

13

*Bridge Co.*, 21 P.2d at 7; *cf. N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 599 (Okla. 1999) (holding a minister was acting outside the scope of his employment as a matter of law when he molested children "for his own personal gratification rather than for any religious purpose"). In a case presenting fabrication allegations similar to Hockenberry's, another district court considered whether an active member of the Navy acted within the scope of her employment when she accused a fellow sailor of sexual harassment. *See Loehndorf v. United States*, No. C14-0106JLR, 2014 WL 3752120, at *2-3 (W.D. Wash. July 30, 2014) (unpublished). Applying Washington respondeat superior law,[1] the court described the scope-of-employment issue in that case as follows:

> [I]f there was behavior constituting sexual harassment or if [the federal employee] reasonabl[y] perceived that there was, [the employee's] conduct was within the scope of her employment. On the other hand, if [the employee] fabricated the allegations, as [the plaintiff] alleges, her actions were outside the scope of her employment. In that scenario, [the employee] would have had no duty to report to her supervisors, and would have been acting purely in her own self-interest. If this were the case, certification would be improper.

*Id.* at *3 (citations omitted). Consistent with the district court's reasoning in *Loehndorf*, the United States does not contend that false reports of misconduct, lodged solely to damage a fellow soldier's life and career, nonetheless serve the

---

[1] The court held that "[u]nder Washington law, an employee acts within the scope of his employment, even if his acts are contrary to instructions or constitute intentional torts, when he is engaged in the performance of the duties required of him by his contract of employment or when he is engaged at the time in the furtherance of the employer's interest." *Loehndorf*, 2014 WL 3752120, at *2 (brackets and internal quotation marks omitted).

Army's interests.  Yet both the United States and the district court assumed the veracity of Kalas's reports in their scope-of-employment analyses.

The district court acknowledged, but rejected as flawed, Hockenberry's argument that Kalas's reports, if fabricated, fell outside the scope of her employment. Its reasoning for that conclusion is unclear.  The court quoted statements by the Supreme Court in *Osborn v. Haley*, 549 U.S. 225 (2007).  In *Osborn*, the Court initially addressed an issue not raised in this case:  whether the Attorney General can certify that a federal officer was acting within the scope of his employment when the officer denies the occurrence of the allegedly tortious conduct claimed by the plaintiff.  *Id.* at 230.  The Court held that certification can properly be based on the United States' understanding of the facts that differs from the plaintiff's allegations. *Id.* at 231.  This is so because "the Attorney General's certification is the first, but not the final word on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as defendant."  *Id.* at 246 (internal quotation marks omitted).  Continuing to address the question of the Attorney General's initial SOE certification, the Court further reasoned that "it would make scant sense to read the [Westfall] Act as leaving an employee charged with an intentional tort to fend for himself when he denies wrongdoing and asserts he engaged only in proper behavior occurring wholly within the scope of his office or employment."  *Id.* at 248 (footnote and internal quotation marks omitted).

The language in *Osborn* that the district court quoted was directed to the Court's holding that a plaintiff's allegations do not control the Attorney General's

15

*initial* SOE certification decision.  The district court appears to have misconstrued

*Osborn* as permitting it—*after* Hockenberry challenged the SOE certification—to

disregard his evidence of fabrication as it related to Kalas's motivation and to rely

solely on the United States' contrary understanding of those facts.  Nothing in

*Osborn* supports that conclusion.  Rather, the Court proceeded to discuss a district

court's "greater factfinding role . . . . [w]hen Westfall Act immunity is in dispute"—

as it was in this case.  *Id.* at 253 n.18.  At this stage of the proceedings, "a district

court is called upon to decide who the proper defendant is:  the named federal

employee, or the United States."  *Id.*  Thus, contrary to the district court's apparent

conclusion, *Osborn* instructs that once an SOE certification is challenged, the district

court must resolve factual disputes and cannot simply defer to the United States'

understanding of the facts.[2]  Moreover, the Court recognized the possibility for

overlap, mainly in cases alleging intentional torts, between the validity of the SOE

certification and the merits of a plaintiff's claim, as well as the potential need for the

district court to make a credibility determination.  *Id.* at 251-52 & n.15 (noting "the

issue [in *Osborn*] that goes to the heart of the merits, as well as to the validity of the

[SOE certification], will likely turn on the credibility of [the plaintiff and the named

federal employee]" (internal quotation marks omitted)); *see also Loehndorf*,

2014 WL 3752120, at *3 (noting that deciding the scope-of-employment question

---

[2] In addition to *Osborn*, the district court cited an unpublished decision from another circuit, which appears to have misconstrued *Osborn* in the same manner, and in any event applied Vermont rather than Oklahoma law.  *See Bowles v. United States*, 685 F. App'x 21, 23-25 (2d Cir. 2017).

16

"require[d] examining issues that go to 'the heart of the merits' of [that] case" (quoting *Osborn*, 549 U.S. at 251)).

The district court also concluded that Hockenberry failed to carry his burden of altering the status quo. *See Richman*, 48 F.3d at 1145 (stating that the SOE certification "is prima facie evidence that an employee's challenged conduct was within the scope of his employment"). We have described the plaintiff's burden as requiring him to "rebut[] the scope-of-employment certification with specific facts." *Id.* Aside from its reliance on *Osborn* to conclude that Hockenberry's central premise was flawed, the district court did not explain why Hockenberry's evidence of fabrication, if believed, did not provide specific facts that would be sufficient to rebut the SOE certification. On appeal, the United States merely repeats the district court's conclusion and provides no analysis of the evidence.

In *Loehndorf*, the district court held an evidentiary hearing and made findings of fact based upon the documentary evidence and testimony (including as to credibility), 2014 WL 3752120, at *4-7, then ultimately concluded the plaintiff had not met his burden of proving that the employee "fabricated her sexual harassment allegations or otherwise acted outside the scope of her employment," *id.* at *8. In light of the relevance of the employee's motivation under Oklahoma respondeat superior law and the disputed fact issues apparent from the record, the district court's conclusion that Hockenberry failed to rebut the SOE certification was premature prior to an evidentiary hearing. When Hockenberry's motivation evidence is properly taken into account, more than one reasonable conclusion could be drawn

from the facts. And as in *Osborn*, *see* 549 U.S. at 251-52 & n.15, the validity of the SOE certification in this case may overlap with the merits of Hockenberry's claims and will likely turn on a credibility determination. Therefore, because disputed fact issues precluded it from deciding the SOE issue as a matter of law, the district court erred in concluding that a hearing on the matter was not necessary. *See Kearns*, 23 F.4th at 812 ("Where there is an issue of material fact, conducting an evidentiary hearing is critical.").[3]

## III.    Conclusion

The district court's order and its judgment dismissing this action for lack of jurisdiction are reversed, and its order denying Hockenberry's motion challenging the SOE certification is vacated. The case is remanded to the district court for further proceedings consistent with this Opinion, including an evidentiary hearing on Hockenberry's challenge to the SOE certification.[4] The court filings provisionally sealed on the parties' unopposed motions shall remain sealed.

---

[3] In light of our ruling that the district court erred by not holding an evidentiary hearing on Hockenberry's motion challenging the SOE certification, we need not address the parties' arguments regarding the district court's conclusion that Hockenberry failed to demonstrate that Kalas's statements to friends and colleagues were not made in the scope of her employment. We note only that the proper focus is on the evidence rather than any lack of detail in the allegations in Hockenberry's complaint.

[4] Hockenberry may request to conduct limited discovery prior to the evidentiary hearing. *See Fowler*, 647 F.3d at 1235. The district court should determine in the first instance whether and to what extent discovery should be allowed.