**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VICKI KOCH, a/k/a Vicki Butrick,

      Plaintiff - Appellant,

v.

CITY OF DEL CITY, a municipal
corporation; JOHN BEECH, an
individual,

      Defendants - Appellees.

No. 10-6105

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 07-cv-00371-D)**

---

Valerie Williford, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Randall J. Wood (Robert S. Lafferrandre with him on the brief), of Pierce Couch
Hendrickson Baysinger & Green, LLP, Oklahoma City, Oklahoma, for Defendants-
Appellees.

---

Before **BRISCOE**, Chief Judge, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Beginning in 2004, Plaintiff-Appellant Vicki Koch and her parents assumed control over the property and care of an elderly woman, Gladys Lance. Ms. Lance's niece became concerned about her aunt's welfare, and in September 2005, when she could no longer locate Ms. Lance, she obtained an order from an Oklahoma state court appointing her as Ms. Lance's special guardian. Several days later, Defendant-Appellant John Beech, an officer of the Del City Police Department, was told by his supervisor that a "pickup" order had been issued for Ms. Lance, and that he should go to Ms. Koch's residence to check on Ms. Lance. When he did, he encountered Ms. Koch on her front doorstep. He asked Ms. Koch where Ms. Lance was located, but Ms. Koch refused to tell him, instead telling him to leave her property and talk to her attorney. When Ms. Koch persisted in her non-responsiveness and turned to leave, Officer Beech arrested her for obstruction. During the arrest, a scuffle ensued, which concluded when Officer Beech brought Ms. Koch to the ground and handcuffed her.

Ms. Koch sued Officer Beech and Del City under 42 U.S.C. § 1983, alleging, inter alia, claims for false arrest and excessive force. The district court granted summary judgment in favor of the defendants, concluding that Officer Beech was entitled to qualified immunity. Ms. Koch now appeals that decision. The appellees, in turn, challenge our jurisdiction to hear Ms. Koch's appeal. As discussed below, we conclude that we have jurisdiction under 28 U.S.C. § 1291, and exercising that jurisdiction, we affirm.

## I.     BACKGROUND

**A.     Factual Background**

### 1.     The relationship between Vicki Koch and Gladys Lance

At all relevant times, Ms. Koch was a resident of Del City, Oklahoma, while Ms. Lance resided in Oklahoma City. Although the parties dispute the nature of their relationship, beginning at least in 2004, Ms. Koch and her parents, Hugh and Lucille Butrick, acted in some sort of care-giving capacity to Ms. Lance. For instance, on January 5, 2004, Ms. Lance signed an affidavit purportedly revoking power of attorney from her niece, Patricia Loar (who resided in Kansas), and granting power of attorney to Ms. Koch and the Butricks. On January 19, 2004, Ms. Lance signed another affidavit in which she purported to name Ms. Koch and the Butricks as her "attorneys-in-fact" and the "conservators or guardians" of her property. (Aplt. App'x at 105, 111.) On July 29, 2005, Ms. Lance signed a document appointing Hugh Butrick as her guardian, and Ms. Koch as her successor guardian, in the event she became incapacitated.

On August 29, 2005, Ms. Lance signed a typewritten document in which she, in return for Ms. Koch's alleged care-giving services, agreed to pay Ms. Koch $1,500 per month. On September 1, 2005, Hugh Butrick sold Ms. Lance's home, and several days later he placed Ms. Lance in a nursing home.

### 2.     The order appointing Loar as Special Guardian

Beginning at least in August 2005, the Oklahoma Department of Human Services ("DHS") began to have concerns about Ms. Lance's welfare. At some point, Ms. Loar

3

came to share these concerns. It appears that by the time Butrick placed Ms. Lance in a nursing home, however, neither DHS nor Ms. Loar could locate Ms. Lance. Accordingly, Ms. Loar filed a petition in the District Court of Oklahoma County seeking to be appointed as "Special Guardian" to Ms. Lance and her property. (Id. at 242.)

On September 8, 2005, the court granted Ms. Loar's petition, finding that there was "imminent danger that the health or safety and the financial resources of Gladys Lance [would] be seriously impaired and dissipated unless an immediate appointment of a special guardian occur[ed]." (Id. (the "Order").) The court also ordered Ms. Koch or her family to "immediately tell DHS, Petitioner and Gladys Lance's family (relatives) the whereabouts of Gladys Lance and why she was removed from her home." (Id.) In order to facilitate Ms. Loar's search efforts, the court granted her the "authority to file missing persons police reports, obtain law enforcement assistance, and do that which is necessary to find the whereabouts of Gladys Lance." (Id.) The court also set forth Ms. Loar's powers as Special Guardian, including the power to "take action to prevent the transfer of [Ms. Lance's] property, including her home." (Id.)

On September 9, 2005, a copy of the Order was placed on Ms. Koch's door. On the same day, Ms. Koch's attorney, Joyce Good, received a letter from DHS stating that it needed to hear from Ms. Koch "regarding the whereabouts of Gladys Lance" and asking to avoid "the need for involvement by the Sheriff's office." (Id. at 277.) Ms. Good informed Ms. Koch that day that DHS was looking for Ms. Lance. Despite this notice and the fact that Ms. Koch knew at that time that her father had placed Ms. Lance in a

4

nursing home, Ms. Koch apparently did not convey Ms. Lance's whereabouts to Ms. Good, Ms. Loar, or DHS.

### 3. Ms. Koch's arrest

On September 13, 2005, Officer Beech was told during his shift "lineup" that a "pick-up order" was in place for Ms. Lance, and that he should periodically check Ms. Koch's residence to see if anyone was there. (Id. at 65.) If so, Officer Beech was charged with making contact with that person in order to check on the welfare of Ms. Lance, who was "supposed to be at th[e] residence." (Id.) The only information Officer Beech received about Ms. Koch and Ms. Lance was what he was told during this shift lineup.

Later that evening, Officer Beech went to Ms. Koch's residence and saw Ms. Koch standing outside of her home. Officer Beech approached Ms. Koch and asked her if she knew where Ms. Lance was located. Ms. Koch told him that he should not be on her property and that he should talk to her attorney. Officer Beech told her that he had an emergency pickup order for Ms. Lance and that if Ms. Koch did not tell him the whereabouts of Ms. Lance he would arrest Ms. Koch for obstruction. Ms. Koch again told him to leave her property. Shortly thereafter, Officer Beech informed Ms. Koch that she was under arrest for obstruction, and as Ms. Koch tried to enter her residence, Officer Beech grabbed her arm. A struggle ensued, they went to the ground, and Officer Beech placed handcuffs on Ms. Koch. At some point during the encounter, Ms. Koch told Officer Beech that Ms. Lance was in a nursing home in the town of Choctaw or Harrah.

5

Ms. Koch alleges that Officer Beech used excessive force in arresting her, and that she sustained injuries as a result.[1]

Ms. Koch was charged with assault and battery upon a police officer and with obstruction. After the arrest, Ms. Lance was located in a nursing home in Choctaw. In February 2006, the district attorney dropped the charges against Ms. Koch.

## B.    Procedural Background

On March 8, 2007, Ms. Koch sued Officer Beech and Del City in Oklahoma state court, alleging various claims under 42 U.S.C. § 1983 as well as state-law claims for assault, battery, and false arrest under common law. On March 29, 2007, the case was removed to the United States District Court for the District of Oklahoma.

### 1.    Ms. Koch's discovery motions

On January 4, 2008, the discovery cut-off date, Ms. Koch filed a motion to continue the trial date and associated pretrial deadlines. The district court granted Ms. Koch's motion in part, extending the discovery deadline for thirty days for the limited

---

[1] On appeal, the parties dispute numerous facts related to the encounter. Officer Beech alleges that Ms. Koch "was immediately confrontational with [him], ordering him off her property in an expletive-laced excoriation." (Aple. Br. at 23 n.2.) Officer Beech further alleges that when he placed Ms. Koch under arrest, she immediately punched him in the chest. Ms. Koch, conversely, contends that Officer Beech began to wring her arms before she told him about Ms. Lance, and that Officer Beech told Ms. Koch that if she did not tell him where Ms. Lance was located he would beat it out of her. Ms. Koch also contends that she did not resist arrest and feared for her safety. However, Officer Beech's contentions are unnecessary to reach our conclusion, and Ms. Koch's contentions are either controverted by her own testimony or were not adequately raised below. Thus, these contentions have no bearing on this appeal.

purpose of allowing Ms. Koch to depose a police supervisor. Following this deposition, Ms. Koch filed another motion to extend the discovery deadline, but the district court denied this motion on August 18, 2008.

### 2. The defendants' summary judgment motions

On December 5, 2007, Officer Beech and Del City filed separate motions for summary judgment. On March 29, 2010, the district court granted those motions, concluding that Officer Beech was entitled to qualified immunity on Ms. Koch's federal claims and that Ms. Koch's state-law claims against Officer Beech and federal claims against Del City failed as a matter of law. The court also declined to exercise supplemental jurisdiction over the remaining state-law claims against Del City, and remanded those claims back to the state court.

## II. APPELLATE JURISDICTION

Ms. Koch appeals from (1) the district court's March 29, 2010 order granting summary judgment in favor of Officer Beech and declining to exercise supplemental jurisdiction over the remaining state-law claims against Del City, and (2) the district court's order denying in part her motion to continue. However, on June 19, 2010, the defendants filed in this Court a motion to dismiss Ms. Koch's appeal for lack of jurisdiction. As discussed below, we conclude that we have jurisdiction over Ms. Koch's appeal and therefore deny the defendants' motion to dismiss.

## A. The Summary Judgment Order

The defendants argue that the district court's order granting summary judgment in their favor is not a final appealable order because the court remanded Ms. Koch's state-law claims to state court without directing entry of a final judgment under Federal Rule of Civil Procedure 54(b). Thus, according to the defendants, the litigation has not been fully terminated for the purposes of 28 U.S.C. § 1291. The defendants are mistaken.

28 U.S.C. § 1291 provides in relevant part that the United States Courts of Appeal "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." "A decision is 'final' when it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." SEC v. Merrill Scott & Assocs., Ltd., 600 F.3d 1262, 1270 (10th Cir. 2010) (internal quotation marks omitted). In cases involving multiple claims or parties, a district court's order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not a final decision unless the district court directs entry of a final judgment as to one or more claims or parties under Rule 54(b), which then becomes final as to those claims or parties. Fed. R. Civ. P. 54(b). However, where a district court resolves all federal claims and remands the remaining state-law claims to state court, there is nothing left to adjudicate, and thus an appellate court has jurisdiction even in the absence of a Rule 54(b) certification. See Porter v. Williams, 436 F.3d 917, 920 (8th Cir. 2006) ("Remanding the remaining state-law claims, after the federal claims are resolved . . .

8

makes [a] partial summary judgment a final order because there is nothing left for the district court to resolve.").

Indeed, in Hyde Park Co. v. Santa Fe City Council, this Court addressed almost the same argument now advanced by defendants: that the district court's order disposing of the plaintiff's federal claims and remanding the remaining state-law claims to state court is "not final under § 1291 because the state law claims which the district court remanded to state court remain unadjudicated." 226 F.3d 1207, 1209 n.1 (10th Cir. 2000). We rejected this argument, determining that "[f]ederal appeals courts have consistently held . . . that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district court subsequently exercised its discretion under [28 U.S.C.] § 1367 to remand supplemental state law claims to state court." Id. We further noted that a contrary conclusion would render a district court's dismissal of federal claims in such a situation "effectively unreviewable." Id.

Although Hyde Park concerned a district court's disposition of federal claims by motion to dismiss, the same rationale applies here, where the federal claims were resolved by summary judgment. See Porter, 436 F.3d at 920. Once the district court granted summary judgment as to all federal claims and some state-law claims, and remanded the remaining state-law claims to state court, there was nothing left for the court to adjudicate. Its decision was thus final and we therefore have jurisdiction to hear Ms. Koch's appeal under 28 U.S.C. § 1291.

9

We also have jurisdiction to review the district court's discretionary remand of Ms. Koch's remaining state-law claims. Under 28 U.S.C. § 1447(c) and (d), an appellate court may not review a district court's remand of state-law claims where the remand is based on lack of subject matter jurisdiction. But "[w]hen a district court remands claims to a state court after declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction for purposes of §§ 1447(c) and (d)." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 129 S. Ct. 1862, 1867 (2009). In this case, the district court expressly made clear that it was remanding based on its discretion not to exercise supplemental jurisdiction under Section 1367(c). Accordingly, appellate review of this determination is not barred by 28 U.S.C. § 1447(c) and (d).

## B.    The Order Denying in Part Ms. Koch's Motion to Continue

Having concluded that we have jurisdiction over the final decision of the district court as set forth in its summary judgment order,[2] we must also conclude that we have jurisdiction to hear Ms. Koch's appeal of the district court's January 2008 order denying in part her motion to continue. The defendants argue that this order is not appealable

---

[2] It appears that the district court in this case did not enter a separate final judgment as required by Federal Rule of Civil Procedure 58. This Rule requires that, subject to stated exceptions not including summary judgment, "[e]very judgment and amended judgment must be set out in a separate document." Fed. R. Civ. P. 58(a). However, "[i]f no question exists as to the finality of the district court's decision, the absence of a Rule 58 judgment will not prohibit appellate review." Burlington N. R.R. Co. v. Huddleston, 94 F.3d 1413, 1416 n.3 (10th Cir. 1996). Here, there is no question that the district court's grant of summary judgment and remand of the remaining state-law claims constituted a final decision.

10

because it relates "to discovery issues or pretrial deadlines in the underlying case," and does not qualify as a final order under 28 U.S.C. § 1291 or Rule 54(b). (Mtn. to Dismiss, at 2, 4.)  However, "once [a] district court enters a final order, its earlier interlocutory orders merge into the final judgment and are reviewable on appeal."  Long v. St. Paul Fire & Marine Ins. Co., 589 F.3d 1075, 1078 n.2 (10th Cir. 2009).  This includes review on appeal from a grant of summary judgment of earlier orders concerning discovery matters.  See Norton v. City of Marietta, 432 F.3d 1145, 1149, 1156 (10th Cir. 2005) (reviewing earlier order denying plaintiff's motion to compel on appeal of district court's grant of summary judgment in favor of defendants).  Accordingly, this Court has jurisdiction to review the district court's order denying in part Ms. Koch's motion to continue.[3]

Because we have jurisdiction to hear Ms. Koch's appeal of the two district court orders at issue, we deny the defendants' motion to dismiss and proceed to the merits of Ms. Koch's appeal.

---

[3] The defendants also challenge this Court's jurisdiction with respect to the district court's August 18, 2008 order denying Ms. Koch's second motion to continue the discovery deadline.  This apparently is based on Ms. Koch's identification of this order in her notice of appeal.  However, Ms. Koch does not raise the August 2008 order in her opening brief, and thus has waived any challenge to this order.  See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").  We therefore deny this aspect of the defendants' motion.

11

### III.    DISCUSSION

Ms. Koch argues that the district court erred in granting summary judgment in favor of Officer Beech on his qualified-immunity defense and in denying her motion to continue the trial. With respect to summary judgment, she contends that Officer Beech is not entitled to qualified immunity on either her false-arrest or excessive-force claims, and that the court's decision to remand the remaining state-law claims against Del City should be reversed so that all claims can be heard together in federal court.[4] With respect to the motion to continue, she argues that the district court erred by not giving her more time to build evidentiary support for the damages aspect of her case.

As discussed below, we conclude that the district court did not err in granting summary judgment in favor of Officer Beech on his qualified-immunity defense to Ms. Koch's claims. Because neither of Ms. Koch's federal claims survive and the district court did not abuse its discretion in remanding the remaining state-law claims, we affirm the district court's summary judgment order. We further conclude that the district court did not abuse its discretion in denying Ms. Koch's motion to continue, and therefore also affirm the district court's January 2008 order.

---

[4] In her opening brief, Ms. Koch also argues that she has a malicious prosecution claim against Officer Beech. However, Ms. Koch did not assert this claim below. "Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal." Turner v. Pub. Serv. Co., 563 F.3d 1136, 1143 (10th Cir. 2009). Ms. Koch points us to no extraordinary circumstances warranting consideration of this newly asserted claim on appeal, and therefore we do not consider it.

12

### A. The District Court's Grant of Summary Judgment in favor of Officer Beech

#### 1. Standard of Review

We review the district court's summary judgment order de novo. Weber v. GE Grp. Life Assur. Co., 541 F.3d 1002, 1010 (10th Cir. 2008). Summary judgment should be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2) (2009); cf. Fed. R. Civ. P. 56(a) (effective Dec. 1, 2010). "Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof." Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Fowler v. United States, 647 F.3d 1232, 1237 (10th Cir. 2011) (internal quotation marks omitted).

However, "[o]ur review of summary judgment orders in the qualified immunity context differs from that applicable to review of other summary judgment decisions." Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1312 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional

13

burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Clark v. Edmunds, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

In addition, although this Court must construe the facts in the light most favorable to the plaintiff as the nonmoving party, "a plaintiff's version of the facts must find support in the record." Thomson, 584 F.3d at 1312. "[M]ore specifically, [a]s with any motion for summary judgment, [w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." Id. (internal quotation marks omitted).

2.      Ms. Koch's claim for false arrest under the Fourth Amendment

Ms. Koch claims that Officer Beech violated her rights under the Fourth Amendment when he arrested her for obstruction. Specifically, she contends that Officer Beech had no reason to believe that she knew where Ms. Lance was located, and thus could not have had probable cause to believe that she committed obstruction by not conveying this information to him. She further argues that Officer Beech is not entitled to qualified immunity on this claim because at the time of her arrest, no reasonable officer could have believed that she was subject to arrest for obstruction for failing to disclose where Ms. Lance was located. As discussed below, we disagree. At the time of Ms. Koch's arrest, it was not clearly established that, under the circumstances, she had a right to refuse to answer Officer Beech's questions. Thus, a reasonable officer could believe that her refusal to answer constituted obstruction. This is sufficient to establish

14

Officer Beech's qualified-immunity defense as a matter of law, and therefore the district court did not err in granting summary judgment in his favor.

In applying the Fourth Amendment's protections against unreasonable searches and seizures, the Supreme Court has recognized three types of police-citizen encounters: consensual encounters, investigative detentions, and arrests. United States v. White, 584 F.3d 935, 944-45 (10th Cir. 2009). Because an arrest is "the most intrusive of Fourth Amendment seizures," an arrest is "reasonable only if supported by probable cause." Id. at 945 (internal quotation marks omitted). Accordingly, "[i]t has long been established that an arrest . . . without probable cause that a crime has been committed violates the Fourth Amendment." Shroff v. Spellman, 604 F.3d 1179, 1188 (10th Cir. 2010).

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." United States v. Alonso, 790 F.2d 1489, 1496 (10th Cir. 1986). This is an objective standard, and thus "[t]he subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive." United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004). Whether a reasonable officer would believe that there was probable cause to arrest in a given situation is based on the totality of the circumstances. Id. at 897.

In this case, Officer Beech arrested Ms. Koch for violation of Section 540 of Oklahoma Statutes Title 21, which provides that "[e]very person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." Specifically, Officer Beech contends that Ms. Koch obstructed him by refusing to answer questions regarding Ms. Lance's whereabouts. (See Aple. Br. at 22 ("Officer Beech arrested Vicki Koch because she refused to tell Officer Beech where Gladys Lance was located.").)[5]

---

[5] In his response brief, Officer Beech references other potential bases for his conclusion that Ms. Koch was committing obstruction. In particular, he cites Ms. Koch's statements to him that he should get off of her property and that he should talk to her attorney, which he equates with an attempt to send him on "a fool's errand." (See Aple. Br. at 18 ("[Ms. Koch] was arrested for obstruction when she refused to answer questions and ordered Officer Beech off her property."); id. at 23 ("Koch told Officer Beech to leave her property and to go talk to attorney Joyce Good, a person that Koch knew did not know where Gladys Lance was located. . . . Koch's decision to order Officer Beech off of her property on a fool's errand was a clear obstruction of Officer's Beech's duty to locate Ms. Lance.").) We do not believe that a reasonable officer could have viewed either of these statements as constituting obstruction.

First, Officer Beech does not provide any basis for concluding that Ms. Koch's statement that he should leave her property could amount to obstruction. He does not argue that he had a warrant, or that exigent circumstances existed that would authorize his presence on Ms. Koch's property without her consent, or that he conveyed either of these things to Ms. Koch. Second, Ms. Koch's statement that Officer Beech should talk to her attorney cannot form a basis for probable cause in this case. Even if Ms. Koch purposefully attempted to send Officer Beech on a "fool's errand" by directing him to Ms. Good, there was no way for Officer Beech to know that at the time, as he had not spoken to anyone other than his shift supervisor about the matter before going to Ms. Koch's residence. In other words, Officer Beech could not have known whether or not Ms. Good knew of Ms. Lance's whereabouts, and thus had no reason to conclude that Ms. Koch's statement was evasive.

Although we look to the totality of the circumstances in assessing whether an

Continued . . .

16

As an initial matter, we conclude on this record that Officer Beech could reasonably believe that Ms. Koch had information concerning Ms. Lance's whereabouts. "Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest," as long as such reliance is "objectively reasonable." Oliver v. Woods, 209 F.3d 1179, 1190-91 (10th Cir. 2000). Here, it is undisputed that Officer Beech was told at shift lineup that a "pick-up order" was in place for Ms. Lance, and that Ms. Lance was believed to be residing at Ms. Koch's residence. It is further undisputed that Officer Beech was charged with going to Ms. Koch's residence to check on Ms. Lance's welfare. Under these circumstances, it was reasonable for Officer Beech to believe that Ms. Koch had information about where to find Ms. Lance.

Ms. Koch argues that Officer Beech's failure to do additional investigation before coming to her residence forecloses any argument that he reasonably believed Ms. Koch knew where Ms. Lance was located. It is true that "police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." Baptiste v. J. C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998). However, Ms. Koch has not pointed

_____

officer has probable cause to arrest, we conclude that neither of these statements can establish probable cause to arrest Ms. Koch for obstruction in this case. We thus only consider these statements to the extent they further reflect Ms. Koch's refusal to answer Officer Beech's question regarding Ms. Lance's whereabouts.

17

to any "easily accessible" additional evidence that would have further informed Officer Beech as to Ms. Koch's knowledge of Ms. Lance's whereabouts, or that would have altered his understanding of the situation. Indeed, there is nothing to indicate that if Officer Beech had consulted the Order or called DHS or Adult Protective Services, he would have discovered anything materially different than what he was informed by his shift supervisor. Thus, we conclude that Officer Beech's belief that Ms. Koch had information about Ms. Lance's whereabouts was reasonable.

We further view as undisputed the fact that Ms. Koch did not convey her knowledge of Ms. Lance's whereabouts until after Officer Beech arrested Ms. Koch. Although Ms. Koch contends otherwise, this is directly contradicted by her deposition testimony. (See Aplt. App'x at 268 ("I said, I don't know any more than Gladys is in a nursing home, but . . . before I could even tell him all that he starts this, doing this thing with my arms." (emphasis added)); id. at 269 ("I thought if I could keep his mind off of breaking, that twisting motion, I could get him to get his mind off of hurting me. Because that's when I said, you don't have to hurt me to make me tell you where she is. I'll tell you. But there was this, he wanted to physically hurt me. He wanted to do that. So that's why I wasn't able to tell him." (emphasis added)).) We thus conclude that Ms. Koch's contrary claims as to when she told Officer Beech about Ms. Lance's whereabouts are contradicted by the record, and therefore do not consider them. See Thomson, 584 F.3d at 1312.

18

This does not resolve the inquiry, however. Even if it was reasonable for Officer Beech to believe that Ms. Koch had knowledge of Ms. Lance's whereabouts, it is less clear whether Officer Beech could reasonably believe that Ms. Koch had the <u>legal obligation</u> to convey this information to him. If she did have such an obligation, then Officer Beech could conclude that her failure to respond to his inquiry constituted obstruction, and the fact that she committed this offense in his presence would give rise to sufficient probable cause to arrest her. See <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Conversely, if Ms. Koch did not have an obligation to respond to Officer Beech's questions, then he could not reasonably believe that her refusal to answer constituted obstruction, and thus would not have had probable cause to arrest her.

In the qualified immunity/summary judgment context, however, a plaintiff must show both that that the defendant violated a constitutional right and that the right was clearly established. <u>Martinez</u>, 563 F.3d at 1088. Thus, in the context of an unlawful arrest, not only must the plaintiff demonstrate that the officer arrested her without probable cause (that is, that he violated a constitutional right), but also that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances (that is, that the right was clearly established in the specific situation). See <u>Bowling v. Rector</u>, 584 F.3d 956, 964 (10th Cir. 2009) ("Our inquiry into whether a

19

constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks omitted)). Accordingly, "[w]hen a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185, 1191 (10th Cir. 2007). Under this framework, sometimes referred to as "arguable probable cause," "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Cortez v. McCauley, 478 F.3d 1108, 1120 & n.15 (10th Cir. 2007) (en banc).

For the purposes of our qualified immunity inquiry, therefore, the relevant question is this: Could a reasonable officer in Officer Beech's position have believed that Ms. Koch had a legal obligation to answer questions about Ms. Lance's whereabouts, such that refusal to answer would constitute obstruction? Put another way, was it clearly established that Ms. Koch had a right not to answer these questions?

The district court concluded that pursuant to the Order, "Officer Beech had lawful authority to investigate the whereabouts of Ms. Lance and to require Plaintiff to answer questions about her location." (Aplt. App'x at 382.) On appeal, the parties spend much of their briefs debating the validity of the Order and Officer Beech's knowledge of the Order before he engaged Ms. Koch. However, these issues are largely irrelevant to the question before us. First, it is undisputed that Officer Beech does not recall if he even saw the Order before going to Ms. Koch's residence. Thus, the contents of the Order

20

cannot inform the probable-cause analysis. Second, if Ms. Koch had a clearly established constitutional right not to respond to Officer Beech's questions, the Order cannot itself alter this landscape. Instead, to resolve whether Ms. Koch had a right to refuse to respond to Officer Beech's questions, we must determine the nature of her encounter with Officer Beech.

Ms. Koch contends that at the time Officer Beech asked her about Ms. Lance's whereabouts, their encounter had become an investigative detention under Terry v. Ohio, 392 U.S. 1 (1968). We agree. Under Terry, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. In this case, Officer Beech was charged with going to Ms. Koch's residence to investigate Ms. Lance's welfare, and based on what he was told during lineup could reasonably believe that Ms. Koch was potentially concealing Ms. Lance's whereabouts. Moreover, his conduct during the encounter evidenced something more than a consensual discussion; he specifically engaged Ms. Koch to check on Ms. Lance's welfare and to try to determine her whereabouts, and indicated to Ms. Koch that she was not free to walk away. Under these circumstances, we conclude that Officer Beech's interaction with Ms. Koch constituted a Terry stop.

Having decided that the encounter at issue constituted a Terry stop, the question becomes whether, as a matter of law, an individual subject to a Terry stop has the right to refuse to answer an officer's questions. In our view, this question not only implicates the

21

Fourth Amendment's right against unreasonable seizures, but potentially also the First

Amendment's right of free speech and the Fifth Amendment's right against self-

incrimination. Specifically, if the First Amendment's right not to speak or the Fifth

Amendment's right not to be a witness against oneself apply in the context of a Terry

stop, then this seems to compel the conclusion that a Terry detainee cannot, under the

Fourth Amendment, be required to answer an officer's questions.[6] We therefore address

the pertinent rights under each of these Amendments in turn.

a)      The Fourth Amendment

Before 2004, it was an open question whether an individual may refuse to answer

an officer's request for identification—or other questions—during a Terry stop. See

Oliver, 209 F.3d at 1190 (stating that "the Supreme Court [has] expressly declined to

address whether an individual has the right to refuse to present identification during a

lawful investigative detention" and citing the Seventh Circuit's conclusion that "it is an

---

[6] Ms. Koch has alleged neither a cause of action based on the First Amendment's right of free speech nor a cause of action based on the Fifth Amendment's right against self-incrimination. She also does not raise these arguments on appeal. Nonetheless, by asserting her rights under the Fourth Amendment—i.e., that her arrest was unconstitutional because it was not based on probable cause—she has sufficiently invoked these issues. As discussed above, in order to determine whether a reasonable officer could believe that Ms. Koch's refusal to answer questions constituted obstruction, we must resolve the issue of whether Ms. Koch was required to answer the officer's questions. If Ms. Koch had a right under the First or Fifth Amendments not to answer these questions, then her refusal to answer could not constitute obstruction. In that case, her arrest was without probable cause and therefore violated her Fourth Amendment rights. We therefore address these issues only to the extent they inform the Fourth Amendment inquiry.

22

open question whether citizens can refuse to respond to questions posed during lawful

investigative stops"); Tom v. Voida, 963 F.2d 952, 959 & n.8 (7th Cir. 1992) (noting that

the Supreme Court has never resolved the question of whether "citizens have a right to

refuse to respond to questions posed during investigative stops").[7]  Then, in Hiibel v.

Sixth Judicial District Court, the Supreme Court held that "[a] state law requiring a

suspect to disclose his name in the course of a valid Terry stop is consistent with [the]

Fourth Amendment."  542 U.S. 177, 188 (2004).  However, the Court did not address

whether refusal to answer other questions during a Terry stop can give rise to probable

cause to arrest.  While the Court noted precedent suggesting that a detainee may refuse to

answer questions, see Terry, 392 U.S. at 34 (White, J., concurring) (stating that while an

individual may be asked pertinent questions during an investigative detention, "the

---

[7] As the court noted in Tom, "[a]nswering this question in either the affirmative or the negative poses problems":

> If citizens do have a right to refuse to answer, then the Terry stop is a rather weak law enforcement device, useful only against the suspect who does not make any attempt to assert his or her rights.  But if citizens do not have a right to refuse to answer, then the Terry stop becomes an extraordinarily powerful law enforcement device, for it permits law enforcement officers to bootstrap their reasonable suspicion of criminal activity justifying an investigative stop into probable cause justifying a search or an arrest based solely on the suspect's refusal to respond to the investigative stop.  Citizens are thus placed in a dilemma: individuals who chose to remain silent would be forced to relinquish their right not to be searched . . . , while those who chose not to be searched would be forced to forgo their constitutional right to remain silent.

963 F.2d at 959 (internal quotation marks omitted).

23

person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest"); Berkemer v. McCarty, 468 U.S. 420, 439 (1984) (stating that while an officer may ask a Terry detainee "a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions," "the detainee is not obliged to respond"), the Court found these authorities not to be controlling. Hiibel, 542 U.S. at 187. In the Court's view, the language from Terry and Berkemer merely "recognize[d] that the Fourth Amendment does not impose obligations on the citizen but instead provides rights against the government," and thus "the Fourth Amendment itself cannot require a suspect to answer questions." Id. Accordingly, the Court declined to view "the dicta in Berkemer or Justice White's concurrence in Terry as answering the question whether a State can compel a suspect to disclose his name during a Terry stop." Id.

Thus, although Hiibel answered the question of whether an individual may be required to provide identification during the course of a Terry stop, the question of whether an individual may be required to answer other questions remains unsettled. See Anderer v. Jones, 385 F.3d 1043, 1076 (7th Cir. 2004) (Coffey, J., dissenting ) (citing Hiibel in concluding that "in the context of a lawful Terry stop . . . the question of whether an investigating officer may detain an individual for refusing to answer a potentially incriminating inquiry, or whether he may use such refusal to elevate his mere suspicion to the level of probable cause, is an issue neither the U.S. Supreme Court nor this Court has resolved to date" (emphasis omitted)). Indeed, Ms. Koch has pointed to no

24

authority—nor could we find any—clearly establishing a right under the Fourth Amendment to refuse to answer an officer's questions during a <u>Terry</u> stop.

### b) The First Amendment

The First Amendment not only protects an individual's right to speak, it also protects an individual's right <u>not</u> to speak. See <u>Wooley v. Maynard</u>, 430 U.S. 705, 714 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."). However, it is not clearly established whether this right applies in the context of questioning during a <u>Terry</u> stop. For example, in <u>Albright v. Rodriguez</u>, an officer arrested the plaintiff when the plaintiff refused to produce identification in response to officer's requests. 51 F.3d 1531, 1533 (10th Cir. 1995). The plaintiff sued under § 1983, contending, <u>inter alia</u>, that the officer's actions violated his First Amendment right not to speak. <u>Id.</u> at 1534. The district court denied the defendant's motion for summary judgment based on qualified immunity, but we reversed. <u>Id.</u> at 1534, 1540. We concluded that because we could find no case "recognizing a First Amendment right to refuse to identify one's self to a police officer during a lawful investigative stop," any such right under the First Amendment was not clearly established and thus the officer was entitled to qualified immunity. <u>Id.</u> at 1539-40.

Turning back to this case, we again have found no authority recognizing a First Amendment right to refuse to answer questions during a <u>Terry</u> stop. In fact, several courts have declined to recognize a First Amendment right not to speak in analogous

25

contexts. See McFadyen v. Duke Univ., 786 F.Supp. 2d 887, 949 (M.D.N.C. 2011)

(noting the lack of authority applying "the First Amendment protection against

government-compelled ideological or political speech into the context of police

interviews" and concluding that as of 2006 "there was no clearly established First

Amendment right not to speak to police officers"); Garcia v. Jaramillo, No. CIV-05-1212,

2006 U.S. Dist. LEXIS 95389, at *51 (D.N.M. Nov. 27, 2006) ("It has been clearly

established that arresting someone for failing to present valid identification pursuant to an

unlawful seizure violates the Fourth Amendment; it has not been clearly established that

such violates the First Amendment."). Thus, at the time of Ms. Koch's arrest, it was not

clearly established that an individual has a First Amendment right to refuse to answer an

officer's questions during a Terry stop.

c)     The Fifth Amendment[8]

---

[8] Ms. Koch does not contend that she verbally invoked her Fifth Amendment right
against self-incrimination to Officer Beech before he arrested her. Because this right "is
not a self-executing mechanism[,] it can be affirmatively waived, or lost by not asserting
it in a timely fashion." Maness v. Meyers, 419 U.S. 449, 466 (1975). However, "this
rule is subject to exception when some coercive factor prevents an individual from
claiming the privilege or impairs his choice to remain silent." Roberts v. United States,
445 U.S. 552, 560 n.6 (1980). In this case, it is undisputed that Officer Beech
affirmatively told Ms. Koch that if she did not tell him where Ms. Lance was located he
would arrest her for obstruction. Other facts surrounding the arrest are disputed, and thus
we do not know, for example, how much time elapsed between Officer Beech's request
for Ms. Lance's whereabouts and the arrest, or whether Officer Beech presented his
questions in an overly coercive manner. Viewed in the light most favorable to Ms. Koch,
it is possible that Officer Beech's conduct made it impossible or otherwise impaired Ms.
Koch's ability to invoke the privilege. Thus, we do not conclude that Ms. Koch's failure

Continued . . .

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Chavez v. Martinez, the Court addressed whether this right is violated where no criminal case is brought against the compelled individual. 538 U.S. 760 (2003). The plaintiff in Chavez was arrested after a scuffle with the police during which the plaintiff was shot several times. Id. at 764. The plaintiff was then taken to the hospital, where the defendant police officer allegedly subjected him to coercive interrogation while the plaintiff was receiving medical treatment. Id. Although the plaintiff was not charged with a crime, he brought a § 1983 claim against the defendant officer, alleging, inter alia, that the officer's interrogation violated the plaintiff's Fifth Amendment right against self-incrimination. Id. at 764-65. The Ninth Circuit affirmed the district court's grant of summary judgment in favor of the plaintiff on the defendant's qualified-immunity defense, but the Supreme Court reversed. Id. at 765-66, 776. A four-member plurality of the Court held that a violation of the Fifth Amendment right against self-incrimination "occurs only if one has been compelled to be a witness against himself in a criminal case." Id. at 770.[9]

_____

to invoke the privilege automatically waived an argument against a finding of probable cause based on the Fifth Amendment.

[9] Although Justices Souter and Breyer did not join the plurality, they agreed that the Fifth Amendment "focuses on courtroom use of a criminal defendant's compelled, self-incriminating testimony, and the core of the guarantee against compelled self-incrimination is the exclusion of any such evidence." 538 U.S. at 777 (Souter, J., concurring).

27

Accordingly, because the plaintiff "was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case," the Court concluded that the defendant officer was entitled to qualified immunity on the plaintiff's Fifth Amendment claim. Id. at 766, 776.

However, the plurality in Chavez explicitly declined to decide "the precise moment when a 'criminal case' commences" for the purposes of the Fifth Amendment right against self-incrimination. Id. at 766-67. Thus, it is unclear in this case whether Officer Beech's conduct potentially violated Ms. Koch's Fifth Amendment rights, where Ms. Koch's refusal to answer Officer Beech's questions was used as a basis to arrest her for obstruction, but she ultimately was not prosecuted on this charge.

At oral argument, Ms. Koch repeatedly cited our decision in Pallottino v. City of Rio Rancho, 31 F.3d 1023 (10th Cir. 1994), to support her contention that her arrest violated the Fifth Amendment. In Pallottino, the plaintiff was arrested after he refused to give his name and address in response to officers' requests. Id. at 1025. He sued under § 1983, alleging that his arrest violated his Fifth Amendment "absolute right to remain silent." Id. We affirmed the district court's grant of summary judgment in favor of the defendants on qualified immunity grounds, concluding that there was "no clearly established right, under the Fifth Amendment, to ignore police requests at the scene of an investigation for a witness's name and address." Id. at 1026. While we noted precedent in which we "recognized a Fifth Amendment right to remain silent may be triggered during a Terry stop," we further noted that "we have narrowly limited that event to pre-

28

arrest custodial interrogations where incriminating questions are asked." Id. Here, Ms. Koch does not allege that her pre-arrest encounter with Officer Beech constituted a custodial interrogation, and, in any event, we did not recognize in Pallottino a well-established right to refuse to answer questions during a Terry stop. Thus, Pallottino does not help Ms. Koch.

In addition, some cases suggest that use of compelled statements as a basis to arrest by itself does not run afoul of the Fifth Amendment. See Hanson v. Dane Cnty., 608 F.3d 335, 339-40 (7th Cir. 2010) (finding no violation of plaintiff's Fifth Amendment rights where officers arrested plaintiff after interrogation without Miranda warnings, because "an arrest does not entail the use of evidence in a criminal prosecution; the arrest precedes the prosecution"); Burrell v. Virginia, 395 F.3d 508, 510-11, 513-14 (4th Cir. 2005) (finding no violation of the Fifth Amendment where plaintiff, who was arrested for obstruction after he refused to provide proof of automobile insurance in response to officers' request, did not "allege any trial action that violated his Fifth Amendment rights"); see also Chavez, 538 U.S. at 766 ("In our view, a 'criminal case' at the very least requires the initiation of legal proceedings.").

Accordingly, at the time of Ms. Koch's arrest, it was not clearly established that an individual has a Fifth Amendment right to refuse to answer an officer's questions during a Terry stop.

d)  Conclusion as to Ms. Koch's false-arrest claim

"In determining whether a right was clearly established, we look for Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains." Lundstrom v. Romero, 616 F.3d 1108, 1119 (10th Cir. 2010).  As discussed above, at the time of Ms. Koch's arrest, there was neither Supreme Court nor Tenth Circuit precedent, nor clearly established weight of authority from other courts, recognizing a right to refuse to respond to an officer's questions during a Terry stop.  A reasonable officer could therefore believe that, under the circumstances of this case, Ms. Koch was required to answer questions regarding Ms. Lance's whereabouts, and that her refusal to do so constituted a willful delay or obstruction of an officer's duty.  Accordingly, the district court did not err in granting summary judgment in favor of Officer Beech on his qualified-immunity defense to Ms. Koch's false-arrest claim.

We emphasize that our conclusion is specific to the facts of this case.  We hold only that in this case, a reasonable officer could believe that Ms. Koch had information regarding Ms. Lance's location, that under the circumstances Ms. Koch was required to convey this information, and thus that her refusal to do so constituted obstruction. Summary judgment was therefore appropriate.

3.  Ms. Koch's excessive-force claim under the Fourth Amendment

Ms. Koch argues that the district court erred in granting summary judgment in favor of Officer Beech on his qualified-immunity defense to her excessive-force claim.

30

We conclude that the district court did not err because Ms. Koch has not sufficiently shown that she was injured by Officer Beech's actions.

"Excessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard." Cavanaugh v. Woods Cross City, 625 F.3d 661, 664 (10th Cir. 2010). Under this standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). While recognizing that this test "is not capable of precise definition or mechanical application," the Court in Graham set forth three non-exhaustive factors for determining whether the use of force in a particular case was reasonable: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (internal quotation marks omitted).

In this case, the first two Graham factors weigh in favor of Ms. Koch. The crime for which she was arrested, obstruction, is only a misdemeanor, see 21 Okla. Stat. § 540, and Officer Beech does not argue that at the time of her arrest Ms. Koch presented an immediate threat to himself or others. However, the third factor weighs somewhat in favor of Officer Beech, as Ms. Koch has not adequately disputed that she resisted arrest.

In his motion for summary judgment, Officer Beech argued that Ms. Koch resisted arrest during their encounter, although he did not cite any evidence as to this claim other than Ms. Koch's statement during her deposition that she "was moving over here and

31

[Officer Beech] kept wringing my hands." (Aplt. App'x at 224, 235, 267.) In response, Ms. Koch merely stated that she disputed this fact, without offering any specific evidence in support. Although in her reply brief on appeal Ms. Koch points to her deposition testimony in which she claims she did not resist arrest, Ms. Koch did not present this evidence in response to Officer Beech's summary judgment motion. We therefore consider it as undisputed that Ms. Koch resisted arrest. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (stating where nonmoving party bears the burden of proof at trial, Rule 56 requires the nonmoving party to go beyond the pleadings and designate specific facts showing a genuine issue for trial). Thus, application of the Graham factors is inconclusive, although it leans towards Ms. Koch.

That does not end our inquiry, however. In cases in which "the handcuffing is permissible yet the manner of handcuffing may render the application of force excessive," "the Graham factors are less helpful in evaluating the degree of force applied." Fisher v. City of Las Cruces, 584 F.3d 888, 896 (10th Cir. 2009). In these cases, then, "an examination of the resulting injury supplements our inquiry." Id. at 897; see also id. at 902 (Gorsuch, J., concurring) (noting that we examine the resulting injury in tight-handcuffing cases in order to "fill a small analytical void that Graham left open"). And in order to succeed on such a claim, a plaintiff must show "some actual injury that is not de minimis, be it physical or emotional." Cortez, 478 F.3d at 1129; see also Fisher, 584 F.3d at 899 (concluding that this standard applies "when the excessive force claim involves the officers' actions in applying handcuffs—a manner of handcuffing claim").

32

In this case, Ms. Koch's excessive-force claim concerns the manner in which Officer Beech applied handcuffs on her during the arrest. For example, in her complaint she alleges that Officer Beech "placed her in handcuffs too tight and caused injury to [her] wrists." (Aplt. App'x at 285.) Consistent with this allegation, in opposing Officer Beech's motion for summary judgment, she submitted evidence of injury as to her arms and wrists. (See Aplt. App'x at 31 (citing as evidence of injury hospital reports and photographs); id.at 149 (hospital report classifying complaint as "some sores on her wrists and arms" and stating that there were "[n]o other associated symptoms or modifying factors"); id. at 203-05 (photographs of Ms. Koch's arms and wrists).) [10] Thus, to succeed on her claim, Ms. Koch must show an actual injury that is not de minimis. She has not done so.

As cited above, the only evidence Ms. Koch submitted to support her claims of injury were hospital reports and photographs of her arms and wrists. The earliest emergency room report, dated four days after her arrest, stated that her wrist and arm injuries "appear[ed] to be just superficial abrasions." (Id. at 151.) And the second emergency room report, dated October 14, 2005, stated that Ms. Koch was "concerned

---

[10] In her opening brief, Ms. Koch alleges that Officer Beech also placed his knee in her back while he placed her in handcuffs. Even if we considered this action to be distinct from Officer Beech's application of handcuffs, Ms. Koch presented inadequate evidence of any injury stemming from this action. Thus, this allegation does not assist her excessive-force claim. See Fisher, 584 F.3d at 898 (noting that this Court requires a showing of "actual harm" in all excessive-force claims).

33

that she has a court appearance having to do with this injury today," and thus she was at the emergency room "because she need[ed] a note saying she has radial nerve damage." (Id. at 160.) The report noted that Ms. Koch had "no other injuries or concerns" other than complaints of numbness in her wrist and forearm, and indicated that the treating physician referred Ms. Koch to a neurologist for these complaints. (Id.) Ms. Koch, however, does not submit any evidence that she saw this neurologist or that any neurological injury was detected.

This evidence indicates on its face that Ms. Koch's injuries were de minimis. Ms. Koch therefore cannot make out an excessive-force claim, and thus cannot show that Officer Beech violated a constitutional right. We therefore do not need to reach the "clearly established" prong of qualified immunity to conclude that the district court correctly granted summary judgment in favor of Officer Beech.

4.      The district court's remand of Ms. Koch's state-law claims

Ms. Koch argues that because this Court should reverse the grant of summary judgment in favor of Officer Beech, the Court should also reverse the district court's remand of the state-law claims against Del City so that all claims are heard in the same court. As discussed above, the district court did not err in granting Beech's motion for summary judgment, and thus there is no reason to disturb the district court's decision to remand.

Moreover, even if we were to review the district court's decision independently, we see no error. "We review a denial of supplemental jurisdiction for abuse of

34

discretion." Nielander v. Bd. of County Comm'rs, 582 F.3d 1155, 1172 (10th Cir. 2009). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998). Here, after the district court granted summary judgment, the only remaining claims were Ms. Koch's state-law claims against Del City. The court did not abuse its discretion by declining to exercise supplemental jurisdiction over these claims.

### B. The District Court's Order Denying in Part Ms. Koch's Motion to Continue

Ms. Koch also appeals the district court's January 17, 2008 order denying in part her motion to continue the trial and associated pretrial deadlines. "We review the district court's decision to deny a continuance for abuse of discretion and do not reverse unless we conclude that the denial was arbitrary or unreasonable and materially prejudiced the appellant." United States v. West, 828 F.2d 1468, 1469 (10th Cir. 1987). We conclude that the district court did not abuse its discretion in denying in part Ms. Koch's motion to continue.

In her motion, Ms. Koch argued that the trial and pretrial dates should be continued for various personal and medical reasons, including so that she could continue to see doctors regarding her alleged injury. Ms. Koch also requested that the discovery

35

deadline be extended so that she could depose Officer Beech's shift supervisor on the day of her arrest. The district court granted Ms. Koch's motion in part, extending the discovery deadline for thirty days for the limited purpose of allowing Ms. Koch to depose the shift supervisor. The court also provided that it would consider another request for a continuance if warranted based on this deposition. However, the court denied Ms. Koch's requests to otherwise continue the pretrial deadlines. The court noted that at the time of Ms. Koch's motion to continue, all pretrial deadlines had been met and all pretrial filings had been made, including the parties' final pretrial report and Ms. Koch's motion in limine, proposed voir dire, and proposed jury instructions. The court concluded that Ms. Koch had failed to show good cause for discovery concerning new matters at that stage of the litigation.

On appeal, Ms. Koch argues that the district court abused its discretion by not granting her motion in full because (1) she was still receiving medical treatment at the time and she needed to finish her treatment in order to show her damages with reasonable certainty; (2) the case had only been pending approximately nine months at the time she filed her motion; (3) only one other continuance had been granted, at the request of all parties; and (4) the defendants would have suffered no inconvenience if the continuance had been granted. We agree with the district court that Ms. Koch's unsupported assertions regarding medical treatment contained in her motion did not establish good cause for additional discovery at such a late stage of the litigation. Moreover, we see no prejudice to Ms. Koch where at the time of her motion she had well over two years after

36

her injury to develop the damages aspect of her case. Under these circumstances, the district court did not abuse its discretion in denying the remainder of Ms. Koch's motion to continue.

## CONCLUSION

For the reasons discussed above, we AFFIRM the district court's order granting summary judgment in favor of Officer Beech and its order denying in part Ms. Koch's motion to continue.